THE CAPITOL LIGHT AND SUPPLY COMPANY *v.* THE GUNNING ELECTRIC COMPANY ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 131951

Memorandum filed March 1, 1963

*Yellin, Rosenberg & Hoffman,* of Hartford, for the plaintiff.

*Philip R. Dunn,* of Hartford, for the defendants.

COTTER, J. The defendant Stratton J. Gunning has entered a special appearance and a plea in abatement, claiming that no process was legally served upon him in this action. The endorsement of the deputy sheriff attests that service was made upon him on November 22, 1962, "at the usual place of abode," which appeared in evidence to be at 58 Ridgewood Road, West Hartford.

The evidence disclosed that he lived with his parents at this address for many years, where they still live, and that he is twenty-eight years old and unmarried. He actively participated in the family business in the named corporation, located in West Hartford, as an officer, stockholder and employee and endorsed the notes, in the amount of $24,035.90, that are the subject of this action. He made an application for an operator's license to the Connecticut department of motor vehicles—and it was thereupon issued to him November 20, 1962—indicating his residence was as above. This license does not expire until November 30, 1964. His previous license was issued November 3, 1960, wherein his residence was the same. He was registered there as a voter September 19, 1956, and has continued on the West Hartford voting list at that

address since that time and is currently a registered voter there. A letter addressed to him was accepted at 58 Ridgewood Road on December 15, 1962, and a certified return receipt for the letter was endorsed by Mrs. Geraldine Gunning. He returned to 58 Ridgewood Road for the Thanksgiving and Christmas holidays in 1962. His brother testified in behalf of the plea that Stratton left Connecticut in the summer of 1962 and "hasn't lived in Connecticut since then," and that he works for a company out of Syracuse, New York. No other evidence was offered in support of the plea.

The question presented is whether the defendant Stratton J. Gunning was properly served in this action. General Statutes §§ 52-54, 52-57. The habitation of a person is his abode. *Cugno* v. *Kaelin,* 138 Conn. 341, 343; 72 C.J.S., Process, § 47, n.14, and Ann. Cum. Sup. The question as to what is a man's usual place of abode is not free from doubt within the purview of the statutes, and the state decisions on this point are not in harmony. There is a great divergence of decision and thought in this connection. See 42 Am. Jur., Process, § 60; note, 62 A.L.R.2d 937; 72 C.J.S., Process, §§ 32, 47.

Connecticut decisions place great reliance upon a man's residence rather than upon his domicil. One may have more than one residence in the state and each be "a usual place of abode," which has been determined to be a residence signifying a temporary place of habitation rather than a permanent place where one lives with the intention to remain. *Clegg* v. *Bishop,* 105 Conn. 564. A person may be a part-time or full-time resident of the state and he may have a "usual place of abode" outside the state and may have one within the state at the same time and each be sufficient for service. *Dorus* v. *Lyon,* 92 Conn. 55, 57. Where a defendant had been sud-

denly taken to a hospital from his home and was a patient at the hospital at the time of service of process, his home was his "usual place of abode." *Havens* v. *Havens,* 17 Conn. Sup. 432. A prisoner is presumed to have his usual place of abode where his family dwelt at the time he was imprisoned, since he never abandoned his former home. *Grant* v. *Dalliber,* 11 Conn. 234, 238. Where a man boards or his hotel, although not his permanent residence, may be his usual place of abode within the meaning of the statute. And where his residence and place of business are in a different state, service at an apartment in which his family resides during the winter season and where he visits occasionally has been held to be his "usual place of abode." *State ex rel. Merritt* v. *Heffernan,* 142 Fla. 496; note, 127 A.L.R. 1267.

In deciding the usual place of abode, many circumstances have been considered, such as the existence of personal possessions at a parent's home where a defendant had lived before he left for naval service, that there was a continuance of ties of blood and affection and that he wrote frequently to persons at home. That he has left the usual place of abode temporarily does not necessarily show that he no longer has a usual place of abode at his home unless there was a marked interruption of the continuity of his living habits at home so that it would be a former place of abode. *Booth* v. *Crockett,* 110 Utah 366. A person may be absent a considerable period of time from a house where his wife and children are living, but such place has been held to be a usual place of abode. *Husband* v. *Crockett,* 195 Ark. 1031.

Here, the defendant had lived with his parents for many years at the West Hartford address and continued his ties of blood and affection by visiting

them during two holidays within approximately four months of the time he is claimed to have left the state. He continues to maintain his voting address in Connecticut at West Hartford and did for the November election in 1962, and a receipt for mail sent to that address was accepted for him. He has continued to hold a Connecticut motor vehicle operator's license, with his residence remaining at 58 Ridgewood Road. There is no showing that he intends to abandon his former home, and he remains unmarried. The only evidence in support of the plea is the vague testimony that he "works out of Syracuse for a company." It is not unreasonable to believe that a young man twenty-eight years of age, unmarried, may, in view of the above circumstances, have a usual place of abode at the present home of his parents.

The plea of the defendant is overruled.